**Thomas Michael HORRAS, Debtor(s).**

**United States of America (Dept. of Health and Human Services), Plaintiff(s)**

v.

**Thomas Michael HORRAS, Defendant(s).**

**Bankruptcy No. 03–02315.
Adversary No. 08–30134.**

United States Bankruptcy Court, S.D. Iowa.

Jan. 30, 2009.

Richard L. Richards, Des Moines, IA, for Plaintiff.

David A. Morse, Des Moines, IA, for Defendant.

WILLIAM L. EDMONDS, Bankruptcy Judge.

Defendant Thomas Michael Horras moves to dismiss the complaint filed by the United States. The court held telephonic hearing on the motion on January 16, 2009. Richard L. Richards, Assistant United States Attorney, appeared for the United States. David A. Morse appeared as attorney for Horras.

The court has jurisdiction of this contested matter proceeding under 28 U.S.C.

§ 1334(b), and by reference from the District Court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

The United States of America, on behalf of the Department of Health and Human Services (hereinafter US–DHHS), filed its complaint on October 29, 2008 (adversary doc. 1). It seeks a determination that a debt owed to it by Horras be excepted from Horras's discharge.

The claim of US–DHHS arises from a determination by the Office of Inspector General of the Department of Health and Human Services issued on or about May 20, 2002. The determination imposed civil money penalties against Horras in the amount of $38,000.00 and an assessment in the amount of $784,072.00. In further proceedings, the assessment was reduced to $673,212.00. The determination also imposed a seven-year exclusion of Horras from participation in Medicare, Medicaid, and all federal health care programs.

US–DHHS alleged that its claim arose from Horras's submission of false or fraudulent claims at a time when Horras was the owner, president, and chief operating officer of Hawkeye Health Services, Inc.

US–DHHS asks that Horras's debt to it on the assessment be excepted from discharge under 11 U.S.C. § 523(a)(2)(A), because of Horras's commission of fraud, and that the civil money penalty in the amount of $38,000.00 be excepted from Horras's discharge under 11 U.S.C. § 523(a)(7) because it is a debt for a fine or penalty to the government.

Horras moves to dismiss the complaint on the grounds that either the court lacks subject matter jurisdiction or the complaint does not state a claim on which relief may be granted. The basis of these assertions is that the complaint was not timely filed.

Horras's contention requires the court to examine the docket of Horras's bankruptcy case, to interpret rulings by the presiding judge, and to interpret the Federal Rules of Bankruptcy Procedure. The court will take judicial notice of the docket events and their docketing dates. These appear to be undisputed.

Horras filed his chapter 7 petition on April 23, 2003. He scheduled the Secretary of Health and Human Services in care of the Office of Inspector General as a creditor holding a contingent, unliquidated, and disputed claim (case doc. 1, Schedule F). He described the claim as follows:

Alleged violation of Civil Monetary Penalties Law and attempt to impose a Civil Money Penalty of $38,000.00 and an assessment of $784,072.00 arising out of claim for government reimbursement for medical services rendered.

*Id.*

In his Statement of Affairs, he listed the administrative proceeding on the claim as pending (case doc. 1, Statement of Affairs, question 4). Indeed, an administrative hearing on the penalty and assessment proposed by the Office of the Inspector General was scheduled to commence before an Administrative Law Judge on April 28, 2003. Horras asked the bankruptcy court to confirm that the automatic stay prevented the administrative hearing from taking place (case doc. 4). The US–DHHS objected to the motion, but stated that it would not attempt to enforce any penalty or assessment without first obtaining relief from the automatic stay (case doc. 5, ¶ 5c). The bankruptcy court denied Horras's motion for order regarding the applicability of the stay (case doc. no. 6). The court ruled that to the extent the stay applied, it was modified solely to permit findings of fact and conclusions of law to be made. The stay is not lifted to permit the enforcement

of any monetary penalties or assessments or to impose any sanctions (*id.*).

The deadline for opposing discharge, including the filing of complaints regarding dischargeability of certain debts, was set as July 27, 2003 (case doc. 3). On July 24, 2003, US–DHHS sought an extension of the deadline (case doc. 13). It advised the court that although the administrative hearing had concluded, a briefing schedule was extant, and the US–DHHS did not expect a decision until approximately March 2004 (case doc. 13). It asked for an extension to file its possible dischargeability complaint until April 1, 2004 (*id.*). Horras objected to the extension, noting that further levels of review of any decision could, literally, take years to exhaust (case doc. 14, ¶ 17). Horras contended that good cause for the extension was not shown, and that the court should bar any complaint after the existing deadline.

Hearing on the motion for extension was held September 30, 2003 (case doc. 15) at which time the court issued a docket text order granting the motion (case doc. 17). It stated that [t]he motion is granted. The government must file its 11 U.S.C. section 523(c) complaint by April 1, 2004. No further continuances will be granted (*id.*).

The court issued a discharge order in Horras's case on September 30, 2003 (case doc. 18). The order specifically described debts not discharged as including most fines, penalties and debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged (case doc. 18, p. 2).

On April 1, 2004, US–DHHS sought a second extension (case doc. 21). US–DHHS told the court that the proposed sanction and assessment were still pending before the Administrative Law Judge, and that Horras, and a co-party, had requested post-hearing oral argument. That request had not yet been ruled on by the ALJ

(case doc. 21, ¶ 37). US–DHHS contended that only the Secretary of the Department of Health and Human Services had jurisdiction to determine the penalty and assessment, and that even if such were imposed, Horras would have rights to appeal. US–DHHS asserted that until a final administrative decision was made in favor of the US–DHHS, there was no federal court jurisdiction over a controversy. Even after such determination, further jurisdiction would be in the Eighth Circuit Court of Appeals. US–DHHS further asserted that until a final determination, it was unable to file a complaint regarding dischargeability (case doc. 21, ¶ 45).

Because of its dilemma, US–DHHS asked for a further extension. It requested that

> the court extend the deadline for filing of a complaint to determine the dischargeability of debt until such time as there is a final determination that a debt is owed by the Debtor to HHS.

(case doc. 21, p. 9).

Horras objected to the further extension (case doc. 24). He disagreed with US–DHHS's assertion that the bankruptcy court lacked jurisdiction, and he contended that the bankruptcy court could have ruled on a timely filed complaint to determine dischargeability of a debt to US–DHHS (case doc. 24, ¶¶ 25–27).

Hearing on the motion was held May 4, 2004. The court issued a docket text order as follows:

> It is hereby Ordered that: The motion is granted; however, beginning June 30, 2004 [the assistant U.S. attorney] shall file quarterly status reports on the progress of the underlying nonbankruptcy case.

(case doc. 28.)

US–DHHS filed such reports on June 30, 2004 (case doc. 30), September 27, 2004

(case doc. 31), December 22, 2004 (case doc. 48), March 24, 2005 (case doc. 49), and May 9, 2005 (case doc. 50). The last report notified the court that the Administrative Law Judge had issued his decision on April 29, 2005, in which he found that Horras was liable to the government in the amount of $673,212.00 in damages (assessment) and for $38,000.00 in civil monetary penalties, as well as a seven-year exclusion from participating in the Medicare and Medicaid programs .... (case doc. 50, ¶ 1; Attachment). US–DHHS stated that it would be in a position to file a section 523(c) complaint within 30 days after the ALJ decision, or that of any appellate body, became final (*id.* at ¶ 3).

In a status report filed on September 30, 2005, US–DHHS notified the court that Horras had appealed the ALJ's decision to the Departmental Appeals Board (hereinafter DAB)(case doc. 51). US–DHHS notified the court on December 21, 2005, that the DAB decision could be expected around March 14, 2006 (case doc. 52). On March 30, 2006, US–DHHS filed a status report that the DAB had issued its decision affirming the ALJ decision (case doc. 53). The decision was attached to its report.

In a status report filed May 22, 2006, US–DHHS reported to the court that Horras had filed notice of appeal with the United States Court of Appeals for the Eighth Circuit (case doc. 54). It further stated its belief that the exclusion of Horras from participation in federal health care programs was not subject to further stay.

On October 30, 2006, US–DHHS filed a Final Notice of Exclusion stating that the Office of Inspector General intended to issue a Final Notice of Exclusion from health programs on or about November 30, 2006 (case doc. 56). Horras sought to enjoin such exclusion and to recover money damages for violation of the automatic stay (case doc. 57). US–DHHS resisted (case doc. 63). After hearing on Horras's motion, the court issued a docket text order on January 30, 2007, finding that the US–DHHS had not willfully violated the court's order preventing enforcement of an administrative decision. No monetary sanctions were imposed, but the court ordered US–DHHS to remove Horras from a data bank on exclusions until a final decision on appeal and the commencement of an action under 11 U.S.C. § 523(c) regarding dischargeability (case doc. 70). US–DHHS complied (case doc. 71).

On August 7, 2007, the Eighth Circuit Court of Appeals issued its decision affirming the decision of the Secretary, as determined in the decision of the Department of Health and Human Services Departmental Appeals Board. *Horras v. Leavitt,* 495 F.3d 894 (8th Cir.2007).

On August 27, 2008, the court set a status conference regarding the substance of its docket text order entered May 4, 2004, in which it granted US–DHHS's request for extension of the deadline for filing a dischargeability complaint (case doc. 72).

The hearing was held September 9, 2008. The court issued a docket text order which stated:

> It is hereby Ordered that: The government must file its 11 U.S.C. section 523(c) complaint by October 31, 2008. No further continuances will be granted. Rule 9006(f) of the Federal Rules of Bankruptcy Procedure does not apply. Beyond notice of electronic filing to electronic filers, service of this docket text only order is waived.

(case doc. 73). US–DHHS filed its Complaint to Determine Dischargeability of Debt on October 29, 2008. As stated, it seeks a determination that its claim

against Horras for civil money penalties of $38,000.00, its assessment of $673,212.00 and Horras's exclusion from participation in federal health programs is excepted from Horras's discharge.

Horras argues that the complaint should be dismissed because US–DHHS missed the initially extended deadline for filing the complaint—April 1, 2004. Horras contends that pursuant to Fed.R.Bankr.P. 4007(c), the court may extend the deadline only once. However, even if the court could grant a second extension, Horras argues that US–DHHS missed the second deadline. As a legal consequence, Horras contends that the Court either lacks subject matter jurisdiction to hear the case and/or there is no claim upon which relief may be granted. (Adversary doc. 4, p. 2, ¶ 3.)

■ Horras argues that the timing limitations of Rule 4007(c) are jurisdictional. I disagree. In the context of an objection to discharge, the Supreme Court construed Federal Rules of Bankruptcy Procedure 4004 and 9006(b)(3) as claims processing rules. They do not delineate what cases bankruptcy courts are competent to adjudicate. *Kontrick v. Ryan,* 540 U.S. 443, 454, 124 S.Ct. 906, 914, 157 L.Ed.2d 867 (2004). The Supreme Court determined that a debtor who objected to the timeliness of the creditor's objection to discharge only after a decision on the merits had waited too long, and thus had forfeited his right to rely on the time limit. The Court pointed out the difference between a rule concerning subject-matter jurisdiction and an inflexible claims-processing rule.

Characteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct; a claims-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be

forfeited if the party asserting the rule waits too long to raise the point. *Id.,* 540 U.S. at 444–45, 124 S.Ct. at 909. Rule 4007(c) provides timing and extension requirements similar to Rule 4004(a) and (b). I conclude that the Supreme Court would treat them the same.

Moreover, our Bankruptcy Appellate Panel has also held that the bankruptcy rules which establish time limits for filing objections to discharge or dischargeability are analogous to statutes of limitations, but they are not jurisdictional. *Le Grand v. Harbaugh (In re Harbaugh),* 301 B.R. 317, 320 (8th Cir. BAP 2003); see also Fed.R.Bankr.P. 9030 (rules may not be construed to affect jurisdiction).

Thus the question before the court is whether the complaint of US–DHHS is timely under Rule 4007(c). If it is, then, as to the effect of the claim-processing rule, it states a claim for which relief may be granted.

■ The court will next dispose of the issue of whether the court may grant an extension for filing a section 523(c) complaint, pursuant to a request made after the expiration of the initial deadline, but within the time period of an extended deadline.

Horras contends that the court has no such discretion, essentially arguing that the deadline for filing such complaints may be extended only once. Fed.R.Bankr.P. 4007(c) (2003) in relevant part stated:

A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a).... On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

There is no dispute that US–DHHS's complaint regarding fraud is a complaint under 11 U.S.C. § 523(c). The deadline in Horras's case, fixed pursuant to the rule, was July 27, 2003. The court extended the deadline to April 1, 2004.

US–DHHS's motion to further extend the deadline was filed within the period of the extension but after the time fixed for the initial deadline. I disagree that under the language of the rule, the court may extend the deadline only once. I conclude that the motion by US–DHHS to further extend the deadline was timely under Rule 4007(c) even though it was filed after the expiration of the original deadline. *Continental Casualty Co. v. Albert (In re Albert)*, 113 B.R. 617, 618–19 (9th Cir. BAP 1990).

■ Horras argues also that US–DHHS missed even the extended deadline. In its second motion to extend, US–DHHS did not request extension to a date certain. It asked that the Court extend the deadline for filing of a complaint to determine the dischargeability of debt until such time as there is a final determination that a debt is owed by the Debtor to HHS (case doc. 21)(emphasis added). On May 4, 2004, Judge Lee Jackwig granted the motion (case doc. 28).

The dispute eventually made its way to the Eighth Circuit Court of Appeals for judicial review. It affirmed the administrative decisions on August 7, 2007. Horras contends that as a consequence of Judge Jackwig's order of May 4, 2004, the date fixed for the filing of the complaint was either August 7, 2007 or the first date after August 7 that the Circuit Court's decision was no longer subject to review.

Under either interpretation, the complaint as to fraud would not be timely. But I disagree with Horras's interpretation of Judge Jackwig's order. Because the order granted the motion, it is necessary to construe the order in relationship to the request by US–DHHS. It asked the court to extend the deadline until such time as there is a final determination that a debt is owed by the Debtor to HHS (motion, case doc. 21.)

Horras appears to interpret the use of the word until in the motion, and thus the order, to mean when or at the time of. I think that the words chosen were an effort not to fix a date certain in reference to the happening of a future event, but rather to provide that there would be no fixing of a further deadline before a final determination was made as to Horras's obligation to US–DHHS. This interpretation is supported by the court's own actions after the decision by the Circuit Court. The court on its own initiative scheduled a status hearing regarding its extension order (case doc. 72). As a result, the court issued its docket text order that the government must file its 11 U.S.C. section 523(c) complaint by October 31, 2008 (case doc. 73). The court certainly appeared to intend a further order to follow its order of May 4, 2004, in order to fix the deadline. US–DHHS met the October 31 deadline, and its complaint is timely. The motion to dismiss will be denied.

IT IS ORDERED that the defendant's motion to dismiss the complaint of the United States of America is denied.